## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JUUL LABS, INC.,

               Plaintiff,

    v.

ZOEY TRADING LLC,

               Defendant.

Civil Action No.: 21-19299 (JXN)(JRA)

**OPINION**

**NEALS**, District Judge

Before the Court is Plaintiff JUUL Labs, Inc.'s ("Plaintiff") unopposed a Motion for Default Judgment and request for a permanent injunction against Defendant Zoey Trading LLC, ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 8.) The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

## I.  FACTS AND PROCEDURAL HISTORY[1]

Plaintiff is the designer, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related products (collectively, "the JUUL Products") (ECF No. 1, Complaint ("Compl."), ¶ 2) and owner of the following federally-registered, registration-pending, and common law trademarks: (1) Reg. No. 4,818,664 for the mark "JUUL®"; (2) Reg. No. 4,898,257 for the mark "JUUL®" (stylized); and Reg. No. 5,918,490 for the mark "JUULpods®" (collectively, the "JUUL Marks") (Compl., ¶¶ 11-12 and Ex A (trademark

---

[1] The facts of this matter derive from the Complaint ("Compl."), (ECF No.1), which the Court accepts as true for purposes of this motion for default judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

registration certificates issued by the United States Patent and Trademark Office (the "USPTO"));
ECF No. 8-3, Declaration of Randall J. Clement, Esq. ("Clement Decl."), ¶ 2.) The JUUL Marks
appear on JUUL Products, as well as the packaging and marketing materials related to such
products. (Compl., ¶ 14.) Plaintiff markets and sells JUUL Products to "current adult smokers,"
through its nationwide authorized network and internationally. (Compl., ¶ 18.)

According to the Complaint, "[b]egining on a date that is currently unknown to [Plaintiff],"
Defendant offered to sell and sold counterfeits, and/or imitations of JUUL Products and the JUUL
Marks ("Counterfeit Goods"). (Compl., ¶ 19.) Plaintiff claims that it has not authorized Defendant
to make or sell JUUL Products in connection with the JUUL Marks. (Compl., ¶ 20.) Plaintiff avers
that the Counterfeit Goods sold by Defendant are not manufactured in accordance with Plaintiff's
quality controls, using unknown substances and materials. (*Id.*) Plaintiff claims the Counterfeit
Goods sold by Defendant "bear counterfeit and confusingly similar imitations of the JUUL Marks
in a manner likely to be confused with genuine JUUL Products. (Compl., ¶ 21.) The Complaint
further alleges that Defendant also offered to sell and sold "non-genuine JUUL Products
which…are only authorized for sale in particular countries outside the United States and materially
differ from genuine JUUL Products ("Unlawful Grey Market Goods")." (Compl., ¶ 22.) Plaintiff
states the Unlawful Grey Market Goods sold by Defendant do not comply with the regulations of
the U.S. Food and Drug Administration. (*Id.*)

Plaintiff's Complaint claims that on November 6, 2020, Plaintiff's representative made in-
person purchase of a Counterfeit Good and an Unlawful Grey Market Good for sale at the Magic
Deli & Smoke Shop retail business owned and operated by Defendant located at 159 Newark
Avenue, Jersey City, New Jersey 07302 (the "Magic Deli & Smoke Shop"). (Compl., ¶ 23 and Ex
B, (images of the products purchased on November 6, 2020); Clement Decl., ¶ 3.)

On March 12, 2021, Plaintiff's counsel mailed a cease-and-desist letter to Defendant (Compl., ¶¶ 24-25 and Ex C (the March 12, 2021 cease-and-desist correspondence); Clement Decl., ¶ 4.) Plaintiff states the cease-and-desist correspondence requested that Defendant contact Plaintiff's counsel to discuss "pre-litigation resolution of the legal issues arising from the sale of the Counterfeit Goods, Unlawful Grey Market Goods, and all other unauthorized use of [Plaintiff's] intellectual property." (Compl., ¶ 25; Clement Decl., ¶ 4.) Plaintiff claims that Defendant did contact Plaintiff's counsel but the parties' communications did not result in the resolution of Plaintiff's claims against Defendant (*Id.*)

On May 4, 2021, Plaintiff's representative made another in-person purchase of an Unlawful Grey Market Good for sale at the Magic Deli & Smoke Shop. (Compl., ¶ 26 and Ex D (images of the product purchased on May 4, 2021); Clement Decl., ¶ 5.)

On October 25, 2021, Plaintiff filed this action asserting claims against Defendant for (i) Trademark Infringement, Counterfeit Goods (15 U.S.C § 1114); (ii) False Designation of Origin, Counterfeit Goods (15 U.S.C. § 1125(a)); (iii) Unfair Competition, Counterfeit Goods (15 U.S.C. § 1125(a)); (iv) Trademark Infringement, Grey Market Goods (15 U.S.C. §1114); (v) Trademark Infringement Under Common Law; (vi) Common Law Unfair Competition; and (vii) Unfair Competition Under N.J. Stat. § 56:4-1. (Compl., ¶¶ 33-78.)

The Complaint and summons were served on Defendant. (ECF Nos. 2, 4, and 6.) After Defendant's time to answer or otherwise respond to the Complaint passed, Plaintiff filed a request for entry of default on January 18, 2022. (ECF No. 7.) Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against Defendant on January 19, 2022. Thereafter, Plaintiff filed the instant Motion with a supporting brief. (ECF Nos. 8, 9.) Defendant has not filed an opposition or response to Plaintiff's Motion.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, a court may enter a default judgment against a properly served defendant who fails to respond. *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). The entry of a default judgement is left to the discretion of the court; however, the Third Circuit has stated its "'preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc.*, 558 F. Supp. 2d at 535 (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Before entering default judgment, the court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018).

In assessing a motion for default judgment, the court should accept the well-pled factual allegations of the complaint as true however, the courts need not accept plaintiff's legal conclusions or allegations relating to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535–36 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The court must also consider the following factors prior to granting default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III.   DISCUSSION

### A.  Jurisdiction and Service

4

When a default judgment is sought against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, LLC*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). The Court finds that it has both subject matter jurisdiction over this matter and personal jurisdiction over Defendant and the requisite service requirement for a default judgment has been met.

i.   Subject Matter Jurisdiction

Plaintiff brings claims under Sections 32(1), 43(a), and 43(c) of the Lanham Act (15 U.S.C. 1114(1) and 1125(a)). (Compl., ¶ 8.) Accordingly, the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and trademark claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b). The Court also has supplemental jurisdiction over Plaintiff's remaining claims arising under common law or state law pursuant to 28 U.S.C. §1367(a) because the claims arise from the same case or controversy as Plaintiff's federal claims.

ii.   Personal Jurisdiction

"[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) (internal quotation marks omitted). "With respect to a company, "the place of incorporation and principal place of business are paradig[m]...bases for general jurisdiction." *Audi AG v. Posh Clothing, LLC*, No. CV 18-14254, 2019 WL 1951166, at *2 (D.N.J. May 2, 2019) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (alteration in original)). Here, Plaintiff alleges that Defendant is a New Jersey limited liability company and its principal place of business is 159 Newark

5

Avenue, Jersey City, New Jersey 07302. (Compl., ¶¶ 7, 9.) Because New Jersey is Defendant's "home," this Court has personal personal jurisdiction over it.

iii.     Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at \*2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). As a limited liability company, Defendant could be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). Here, on October 27, 2021, the Summons and Complaint were personally served at the principal place of business on Defendant's self-identified registered agent and member authorized to receive the service. (ECF No. 6 (Affidavit of Service filed November 5, 2021); Clement Decl., ¶ 7.) Therefore, service was proper.

**B.  Sufficiency of Plaintiff's Causes of Action**

Next, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Chanel, Inc.*, 558 F. Supp. 2d at 535-36).

Plaintiff's Complaint asserts four claims under the Lanham Act: (Count I) Trademark Infringement, Counterfeit Goods (15 U.S.C § 1114); (Count Two) False Designation of Origin, Counterfeit Goods (15 U.S.C. § 1125(a)); (Count Three) Unfair Competition, Counterfeit Goods (15 U.S.C. § 1125(a)); and (Count Four) Trademark Infringement, Grey Market Goods (15 U.S.C. §1114) (collectively, the "Lanham Act Claims"). (Compl., ¶¶ 33-65.) Plaintiff also asserts three claims under common law and state law: (Count Five) Trademark Infringement Under Common

Law; (Count Six) Common Law Unfair Competition; and (Count Seven) Unfair Competition Under N.J. Stat. §56:4-1 (collectively, the "Common Law and State Law Claims"). (Compl., ¶¶ 66-78.) Because "the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law," the Court's following analysis applies to both the Lanham Act Claims and the Common Law and State Law Claims. *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); see also N.J. Rev. Stat. §§ 56:4-1 & 56:4-2; Pharmacia Corp. v. Alcon Labs., Inc., 201 F. Supp. 2d 335, 386 (D.N.J. 2002); Cornwell Quality Tools Co. v. Blanco, No. 16-05086, 2018 WL 2441750, at *3 (D.N.J. May 31, 2018) (citing Fruit Flowers, LLC v. Jammala, LLC, No. 14-5834, 2015 WL 5722598, at *3 (D.N.J. Sept. 29, 2015)).

To establish a legitimate cause of action for an alleged violation of the Lanham Act, a plaintiff must show that: (1) "it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210-11 (3d Cir. 2000). "The first two elements are satisfied by registration and ownership of the relevant trademarks." *Coach, Inc. v. Quisqueya Agency Inc.*, No. 13-3261, 2014 WL 3345434, at *1 (D.N.J. July 8, 2014). Additionally, "to prevail on a trademark infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized." *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 8-4248, 2009 WL 1687484, at *3 (D.N.J. June 16, 2009) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

Here, Plaintiff has established that it is the owner of valid and legally protected JUUL Marks in satisfaction of the first two elements. (Compl. ¶¶ 11-12; ECF No. 8, Clement Decl., ¶ 2

and Ex A (trademark registration certificates.) *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2302, 207 L. Ed. 2d 738 (2020) ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a presumption that the mark is valid.") (citation omitted); *see also E.A. Sween Co. v. Deli Express of Tenafly, LLC.*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A 'certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.") (quoting *Coach, Inc. v. Cosmetic House*, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011)). Plaintiff also contends that Defendant is not authorized and never has been authorized by Plaintiff to produce, manufacture, distribute, market, offer for sale, and/or sell merchandise bearing the JUUL Marks, or any variations thereof. (Compl. ¶ 27.) The Court finds that Plaintiff has an unrebutted presumption of the validity of the JUUL Marks, its ownership of the marks, and its exclusive right to use the marks in commerce or in connection with the goods or services specified in the certificates.

Next, the Court must assess third element for the Lanham Act Claims, whether Plaintiff has established that Defendant's use of the JUUL Marks to identify goods causes a likelihood of confusion. A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quoting *Ford Motor Co., v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)); *see also Lorillard Techs, Inc. v. NJ Ale House, LLC*, No. 14-2044, 2015 WL 1197531, at *8 (D.N.J. Mar. 13, 2015). The Third Circuit has established a multifactored analyses to determine whether the defendant's marks are likely to cause consumer confusion as to the plaintiff's marks.

8

*See e.g., Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (setting forth ten factors) (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)). However, the Third Circuit noted that when the trademark holder and the alleged infringer have competing goods or services, the court will rarely need to "look beyond the mark itself." *Lapp,* 721 F.2d at 462. The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *Opticians Ass'n of Am.*, 920 F.2d at 195 (finding "likelihood of confusion ... inevitable, when ... the identical mark is used concurrently"); *see also U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) (holding that "a great likelihood of confusion [exists] when an infringer uses the exact trademark").

This Court need not conduct a detailed analysis under each *Lapp* factor because Plaintiff's Complaint, which must be perceived as true at this juncture, establishes a significant likelihood of confusion. *See Comdyne I, Inc.* 908 F.2d at 1149. The Complaint sufficiently alleges that Defendant has offered to sell and sold products, Counterfeit Goods and Unlawful Grey Market Goods, using imitations of JUUL Products and the JUUL Marks without Plaintiff's authorization. (Compl. ¶¶ 19-32.) Plaintiff alleges that the counterfeit marks on Defendant's Counterfeit Goods "are *identical* to Plaintiff's registered JUUL Marks" and intended to confuse consumers into believing that Defendant's Counterfeit Goods are authorized JUUL Products. (Compl., ¶¶ 28, 35.) Counterfeit goods, by definition, are intended to create consumer confusion. *See A&H Sportswear, Inc.,* 237 F.3d at 214 (when goods are directly competing and the marks are clearly very similar, the court should feel free to consider only the similarity of the marks themselves); *Chanel, Inc*, 133 F.Supp. 3d at 683-88 (where the trademark owner and the alleged infringer deal in competing goods, the court need rarely look beyond the mark itself, but instead the analysis turns upon whether the marks are confusingly similar) (citation omitted). Additionally, Plaintiff states its Grey

Market Goods are manufactured and packaged for sale to consumers residing outside the United States in accordance with foreign regulations. Plaintiff alleges that the Unlawful Grey Market Goods sold by Defendant are non-genuine and materially different products which also cause a likelihood of consumer confusion. (Compl., ¶ 59.) *See Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302-03 (3d Cir. 1998) (material differences between grey market goods and the goods that the trademark owner ordinarily sells in the United States renders the grey market goods not genuine and establishes trademark-infringement claims under the Lanham Act). Accordingly, there is little doubt that Defendant's sale of Counterfeit Goods and Unlawful Grey Market Goods baring marks that are *identical* Plaintiff's JUUL Marks are highly likely to cause consumer confusion. The Court finds that the Complaint and the evidence presented sufficiently establish Defendant's liability under the Lanham Act Claims as well as unfair competition under common law and New Jersey statute.

### C. Default Judgment Factors

Before ordering a default judgment, the must determine the appropriateness of the judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015).

First, in the absence of a default judgment, Plaintiff has no other recourse to seek relief for the harm Defendant has caused and is causing by selling the Counterfeit Goods and Unlawful Grey Market Goods. *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *5 (D.N.J. June 8, 2007); *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012). Defendant's conduct risks damage to Plaintiff's business

reputation good will, as well as its ability to control and protect the JUUL Marks. Consequently, Plaintiff will be prejudiced if default judgment is not entered. *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016). Second, Defendant has never participated in this matter, they never filed an answer or otherwise responded to the Complaint. Thus, "Defendant has put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Moreover, it does not appear that a litigable defense is available because Plaintiff provided evidence demonstrating that it owns the JUUL Marks and that Defendant is using a non-authorized, confusingly similar mark. Third, Defendant's failure to appear in this matter permits the Court to draw an inference of culpability on their part. *See Int'l Union of Painters*, 2016 WL 3234516, at *3. And "[t]he public concern for enforcing the Lanham Act ... weighs in favor of entering default judgment in this matter." *Days Inn*, 2007 WL 1674485 at *5. Accordingly, the Court finds that default judgment is proper in this case.

### D. Damages

While the factual allegations of the Complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc.*, 908 F.2d at 1149. Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016). Plaintiff seeks statutory damages under the Lanham Act in the amount of $90,000, as well as post-judgement interest, attorneys' fees, and costs. (ECF No. 8 at 17-22.)

#### i.  Statutory Damages

In cases involving the use of a counterfeit mark under the Lanham Act, a Plaintiff can elect to recover statutory damages instead of actual damages. 15 U.S.C. § 1117(c). The Lanham Act

provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just...." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded. 15 U.S.C. § 1117(c)(2). *N.V.E., Inc. v. Day*, No. 07-4283, 2009 WL 2526744, at *3 (D.N.J. Aug. 18, 2009) (quoting *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir.2005)).

The Court concludes that Plaintiff has established that Defendant's conduct was willful. After Plaintiff's counsel sent Defendant a cease-and-desist letter, Defendant continued to sale non-genuine JUUL Products bearing the JUUL Marks. (Compl., ¶ 26.) Additionally, "because Defendant wholly failed to respond to Plaintiff's Complaint and Motion, 'the Court can infer that the trademark infringement was indeed willful.'" *InnovAsian Cuisine Enters. v. Innovasian Taco*, No. 19-16296, 2020 WL 3969917, at *7 (D.N.J. July 14, 2020) (quoting *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 08-4248, 2009 WL 1687484, at *7). As a result, Plaintiff may recover "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. CV 20-9537, 2021 WL 1541054, at *8 (D.N.J. Apr. 20, 2021) (quoting *Delta Air Lines, Inc. v. Fly Tech, LLC*, No. 16-2599, 2018 WL 1535231, at *3 (D.N.J. Mar. 29, 2018) (internal quotation omitted)). To determine what statutory damages award is just, courts have looked to the following factors: 1) the expenses saved and the

profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the intellectual property; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Chanel, Inc.*, 133 F.Supp.3d at 688 (citations omitted).

Here, however, Defendant's default prevents the Court from making specific findings on the factors that require review of data in Defendant's possession. Specifically, Defendant has not participated in this action and has not provided records relating to sales, profits, and production valuations. "The Lanham Act does not provide guidelines for courts to use in determining an appropriate award, but instead leaves it to each court's discretion to award an amount it considers just." *Delta Air Lines, Inc.*, 2018 WL 1535231, at *3 (internal quotations and citations omitted). "Because statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages 'bear some relation to the actual damages suffered.'" *Id.* (alteration in original) (quoting *Coach*, 2011 WL 1882403, at *6).

As noted, Plaintiff seeks $90,000 in statutory damages against Defendant. (ECF No. 8 at 20.) Plaintiff alleges it suffers irreparable harm from Defendant's willful infringement upon the JUUL Marks through the sale of Counterfeit Goods and Unlawful Grey Market Goods and conduct in deceiving consumers and causing, or at least was very likely to cause, consumer confusion and mistake. (Compl. ¶¶ 2430.) Plaintiff continues that Defendant's sale of non-genuine JUUL products results in economic loss to Plaintiff including loss of sales of genuine JUUL Products, damages the goodwill of the JUUL brand, and thwarts Plaintiff's efforts and expenditures to promote its genuine JUUL Products. (*Id.* ¶¶ 32, 37, 52, 54.) As a result of Defendant's failure to respond to the Complaint, Plaintiff cannot provide an estimation of its actual damages. However,

Plaintiff asks for $90,000 in statutory damages against Defendant, "$30,000 for each of the three JUUL Marks identified in the Complaint" (Compl., ¶ 20.) Plaintiff cites to several cases to assert that a $90,000 award is in line with other awards in other actions and will serve the goals of compensating Plaintiff, punishing Defendant, and deterring others from similar misconduct.

> See Chanel, Inc. v. Matos, 133 F.Supp.3d 678, 688 (D.N.J. 2015) 133 F.Supp.3d at 688 (finding an award of $30,000 per infringement was sufficient to compensate plaintiff for losses and to deter defendant when infringement was willful and the types of goods bearing counterfeit marks were limited); Coach, Inc. v. Fashion Paradise, LLC, No. 10-4888, 2012 WL 194092, at *8 (D.N.J. Jan. 20, 2012) (awarding $30,000 per infringement because that amount took into account defendants' culpability and willfulness, was significant enough to compensate plaintiffs and to deter defendants, and acknowledged the fact that the sales took place at a small shop); Coach, Inc. v. Bag Place, Co., No. 10-6226, 2012 WL 13028160, at *10 (D.N.J. May 7, 2012) ("Having considered the past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning Plaintiff's losses, the Court will exercise its discretion to award Plaintiff $30,000 per mark[.]").

(ECF No. 8 at 20-21.)

The Court finds that an award of $90,000 – a figure significantly below the $2 million statutory maximum – is reasonable and grants Plaintiff $90,000 in statutory damages against Defendant.

### i. Post-Judgment Interest

Plaintiff also seeks post-judgement interests, attorneys' fees, and costs. (ECF No. 8 at 21-22.) First, Plaintiff claims that it is entitled to post-judgement interest at the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Pursuant to 28 U.S.C. § 1961, Plaintiff is entitled to the amount of statutory damages

multiplied by a rate equal to the weekly average one-year constant maturity Treasury Yield for the calendar week preceding the date judgment is entered, that rate is 1.55.[2]

### ii.  Attorneys' Fees and Costs

Plaintiff asserts that The Lanham Act provides that the Court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "'Exceptional' has been interpreted by the Court to mean an action involving culpable conduct." *Delta Air Lines*, 2018 WL 1535231, at *5 (citing *Securacomm Consulting, Inc.*, 224 F.3d at 280); *see also Chanel, Inc.*, 558 F.Supp.2d at 538 (granting attorney fees based on finding of willfulness because "[t]he fact that Defendant sold goods using marks that were identical to such strong and established marks conclusively demonstrates his desire and purpose to trade upon [Plaintiff]'s goodwill"). Additionally, "The Lanham Act entitles a plaintiff who prevails in an action for trademark infringement, brought under 15 U.S.C. § 1125(a) or (d), or for willful infringement, pursuant to 15 U.S.C. § 1125(c), to recover the costs of the action." *Delta Air Lines*, 2018 WL 1535231, at *5 (citing 15 U.S.C. § 1117(a).) Here, the Court finds that Defendant's willful misconduct establishes an "exceptional case" justifying an award of reasonable attorneys' fees and costs. The amount will be determined by the Court upon Plaintiff's filing of a certification concerning the total among of fees and costs.

### iii.  Injunctive Relief

Plaintiff requests the Court enter a permanent injunction pursuant to 15 U.S.C. § 1116 to prevent any future trademark infringement by Defendant. (Compl., at 14-15; ECF No. 8 at 22.) Courts may enter a permanent injunction against defendants in a trademark infringement and unfair

---

[2] The Fed-Selected Interest rates (Daily)-H.15. The Fed - Selected Interest Rates (Daily) - H.15 - March 31, 2022 (federalreserve.gov)

competition case "in the context of a default judgment where the [] [permanent injunction] requirements are met." *Howard v. Laws*, No. 13-0957, 2014 WL 3925536, at *8 (D.N.J. Aug. 12, 2014); *see also Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). Additionally, pursuant to 15 U.S.C. § 1116, "[c]ourts ha[ve] the authority to grant injunctive and other equitable relief to prevent ... violations of a plaintiff's trademark rights." *Chanel*, 558 F. Supp. 2d at 539. For the Court to grant injunctive relief to prevent further violation of Plaintiff's mark, Plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The Court finds that permanent injunctive relief is warranted. First, it is well settled that trademark infringement may amount to irreparable injury as a matter of law. *See Citizens Fin. Grp. Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004) (determining that trademark infringement amounts to irreparable injury as a matter of law); *see also Opticians Ass'n of Am.*, 920 F.2d at 195 (in trademark-infringement cases, irreparable injury exists as a matter of law due to the plaintiff's loss of control of reputation, loss of trade, and loss of goodwill) (citation omitted); *Luxottica Grp. S.p.A. v. Accessory Consultants LLC*, No. 19-11732, 2020 WL 1910378, at *7 (D.N.J. Apr. 20, 2020) ("Infringement based on a likelihood of confusion is tantamount to a finding of irreparable injury."). This is because the "[l]ack of control over one's mark 'creates the potential for damage to ... reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Opticians Ass'n of Am.*, 920 F.2d at 196). This is precisely the

case here, Defendant's sale of Counterfeit Goods and Unlawful Grey Market Goods bearing the JUUL Marks threatens the goodwill Plaintiff garnered from its trademarks.

Second, courts have found that injury to goodwill is a type of injury that cannot be compensated with money damages, the remedy at law. *See e.g., Isr. Disc. Bank. of N.Y. v. H.N. Int'l Grp., Inc.*, No. 16-6258, 2016 WL 6023155, at *4 (D.N.J. Oct. 14, 2016); *Coach, Inc. v. Bags & Accessories, No. 10-2555, 2011WL 1882403, at *9 (D.N.J. May 17, 2011)* (regarding distribution of counterfeit goods, the legal monetary remedy would not adequately compensate for the reputational injury, nor would it necessarily prevent, or even impede, future trademark infringement) (citations omitted). Accordingly, Plaintiff has established that monetary damages are inadequate to compensate its injury.

Third, in considering the balance of hardships, the Court finds that equity warrants the relief Plaintiff seeks. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought the injury upon itself.") (citations omitted); *see also Opticians Ass'n of Am.*, 920 F.2d at 197. Defendant will not be unduly burdened by the issuance of an injunction given that "[t]he only hardship imposed upon the [d]efendants is that they obey the law". *Coach*, 2011 WL 1882403 at *9. Thus, the balance of the hardships warrants an equitable remedy.

Finally, the public interest weighs in favor of Plaintiff. The Third Circuit has recognized the public interest to issue an injunction in trademark-infringement cases that have established a likelihood of consumer confusion.in enforcing trademark rights. *See Opticians Ass'n of Am., 920 F.2d at 197; Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984) (determining that "there is a public interest in the protection of the trademark and to avoid confusion in the public").

"Issuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest." *Coach*, 2011 WL 1882403, at *9 (citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007)).

Consequently, as Plaintiff has satisfied the factors for a permanent injunction articulated in *eBay*, the Court will grant Plaintiff a permanent injunction that prevents Defendant from further infringing on Plaintiff's JUUL Marks. *See eBay*, 547 U.S. at 388.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Default Judgment as well as its request for a permanent injunction against Defendant's infringement of Plaintiff's JUUL Marks. Post-judgement interest, attorneys' fees and costs will be determined by the Court upon Plaintiff's filing of a certification concerning the total among of fees and costs.

An appropriate Order and Final Judgment follows.


**JULIEN XAVIER NEALS**
**United States District Judge**

18